No. 28,736.

H. L. SMYSER, *Appellant*, v. R. W. KLINE et al., *Appellees*.

(281 Pac. 927.)

Opinion filed November 9, 1929.

*R. E. Angle*, of Wichita, for the appellant.

*A. J. Adams*, of Wichita, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one of ejectment. The defense was that a deed from defendant to plaintiff and a contract between them giving defendant an option to purchase were procured by fraud, and were without consideration. The court gave plaintiff a lien on the premises in controversy, and he appeals.

Previous to May 4, 1922, the land was owned by Roscoe Meador. Meador made a trade with J. M. Parker which involved payment to · Meador of $2,000. The plaintiff, Smyser, furnished the money. On May 4, 1922, and as a part of the bargain between Parker and Meador, Meador conveyed to Smyser. Also, as a part of the bargain, Smyser entered into a contract with Flora E. Parker, J. M. Parker's wife. The contract recited that Smyser had purchased the land, that Meador had deeded to Smyser, and that the deed had been recorded. Smyser executed a deed which, together with the contract, was deposited in a bank. The deed was to be delivered to Mrs. Parker only on compliance with conditions expressed in the contract. The conditions were that Smyser was to be paid $2,000, with interest at eight per cent per annum, on or before two years from date, and $250 of the amount, with interest, were to be paid on or before November 4, 1922. Time was of the essence of the contract; sixty days after default in making any payment, the deed

and all other papers were to be immediately delivered by the bank to Smyser; and on noncompliance with the conditions whereby Mrs. Parker could secure delivery of the deed to her, possession of the land was immediately to be surrendered to Smyser. J. M. Parker was not a party to this contract, rested under no duty to Smyser, and so far as the contract was concerned would receive no benefit from performance by either Smyser or Mrs. Parker. The legal presumption is that the land was a gift to Mrs. Parker. The contract recited that it was subject to a first mortgage on the land.

Meador surrendered possession of the land to the Parkers. Seven years have now elapsed since the first payment became due to Smyser. Neither Mrs. Parker nor anybody else has as yet made any payment whatever to Smyser, to reimburse him for this advancement of the purchase price of the land.

On March 20, 1924, J. M. Parker entered into a contract with V. R. Kelso. Parker agreed that, if Kelso first made the payments provided for, Parker would convey the land to Kelso, subject to the first mortgage, which Kelso assumed and agreed to pay. The $2,000 Parker-Smyser contract was made a second lien, and no deed was to be delivered to Kelso until the second lien was paid in full. Time was made of the essence of the contract, and unless Kelso paid the second lien within thirty days after maturity he forfeited his rights. Kelso agreed to pay Parker $1,600 within two years, with eight per cent interest per annum payable semiannually. Kelso took possession.

On June 3, 1924, J. M. Parker assigned his interest in his contract with Kelso to Smyser for $1,300. Smyser did not assume performance of Parker's duty under the contract. Kelso paid Smyser nothing except the first installment of interest on the $1,600, amounting to $64.

It will be remembered that when, pursuant to the Meador-Parker transaction, payment was made to Smyser the land was not to go to J. M. Parker. It was to go to Flora E. Parker, and Smyser's deed was deposited in the bank to await compliance with the conditions precedent to its delivery to Flora E. Parker. As indicated, nobody performed or offered to perform those conditions. Mrs. Parker did not pay even the $250 due November 4, 1922. Parker was a stranger to the title and had no power to create equities in the land. Mrs. Parker was not a party to the Kelso contract. She went out of possession, and on July 3, 1924, Smyser was privileged to go to the bank, take down his deed to Flora E. Parker, and the other title

papers, and hold the land unconditionally under his deed from Meador.

In March, 1925, Kelso deeded to defendant R. W. Kline, and Kline took possession. The deed was filed for record on October 7, 1925, and the recited consideration was one dollar and other good and valuable considerations. No assumption of debt was mentioned in the deed, but Kline testified at the trial that he assumed what was coming to Smyser. With Smyser's assent this assumption could create the relation of debtor and creditor between Kline and Smyser.

Kline paid nothing to Smyser, and in July, 1926, Smyser told Kline he wanted to get the business relating to the land straightened up. The result was, Kline executed a quitclaim deed to Smyser, rented the land of Smyser, and took an option to purchase. A carefully prepared contract was signed by Kline, Kline's wife, and Smyser. A portion of the introductory paragraph follows:

"This agreement, made this 23d day of July, 1926, by and between H. L. Smyser, party of the first part, and R. W. Kline, party of the second part,

"Witnesseth, That whereas heretofore the said party of the first part has held title as security to the real estate hereinafter described, to wit: [Description]."

A portion of the consideration was stated as follows:

"Said party of the first part has agreed and does hereby cancel all debts owing him by the said party of the second part, and the relation of creditor and debtor shall from this date cease."

After grant of option to Kline to purchase on stated terms on or before January 23, 1928, the contract continued as follows:

"Upon payment of said sums of money at any time on or before eighteen months from this date, said party of the first part agrees to execute a deed conveying said property to said party of the second part. Said purchase, however, and said deed are all to be subject to the first mortgage thereon and the interest from this date on the said first mortgage, providing that said party of the first part can and does purchase said first mortgage, but if he is obliged to pay off said first mortgage, then the amount paid on said first mortgage, together with interest thereon at the rate of 7½ per cent per annum from the date of payment, shall be added to the amount necessary to exercise this option, it being understood that said first mortgage is now past due.

"It is further understood by and between the parties hereto that this contract is made for the purpose of saving the expense of foreclosure and deficiency judgment, and from and after the execution of this contract and the delivery of said deed, the relation of creditor and debtor shall cease, and the said party of the second part shall have the option to purchase said real estate as herein specified.

"It is further understood and agreed that the party of the first part shall and does hereby lease to the party of the second part the said real estate herein described at an annual rental of six hundred ($600) dollars per year, payable three hundred ($300) dollars on the first days of February and August in each year, the first rental to be due February 1, 1927, which shall be for the preceding six months, said tenancy to continue until the 23d day of January, 1928, or during the life of this option, but a failure to pay said rental when due shall avoid the tenancy, and the party of the first part shall be entitled to the immediate possession, but a failure to pay said rental shall not destroy the option to purchase."

The contract concluded with the following provision:

"It is further understood and agreed that time is the essence of this agreement, and that the option must be exercised on or before eighteen months from this date, and if not exercised, that all rights of the party of the second part to purchase said real estate shall cease."

Kline paid one installment of rent, in the sum of $300, but made no offer or effort to purchase on or before January 23, 1928, and on February 20, 1928, Smyser commenced the action of ejectment. At the conclusion of the transaction of July 23, 1926, no debt remained. The previously existing relation of debtor and creditor was terminated. By virtue of his assumption of what was due Smyser, Kline became principal debtor, and his discharge discharged previous obligors in privity with him. There could be no mortgage or lien because there was no debt, and on the facts which have been stated Smyser was entitled to judgment.

In the fourth answer to the petition Kline alleged the contract of July 23, 1926, and Kline's quitclaim deed to Smyser were obtained by fraudulent representations. The representations were pleaded as follows:

"That said false and fraudulent statements and representations consisted of the claim of the plaintiff and his telling the defendants that he was the absolute owner and held the legal title to said twenty-acre tract. . . .

"That the defendants were induced to execute and deliver said quitclaim deed to the plaintiff by reason of the false and fraudulent representations by him made to the defendants that the plaintiff was the fee-simple owner of said twenty-acre tract, and the plaintiff told the defendants that their warranty deed which they had received from V. R. Kelso was no good and of no value and that plaintiff held the title and was the owner thereof and that Kelso had no right to make the deed, . . ."

At the trial Kline testified as follows:

"Mr. Smyser said he wanted to get that business straightened up out there He says: 'You hold a deed from Mr. Kelso which,' he says, 'is no good whatever.' He said, 'It is not any good because he could not make title to you; I

hold the title myself, and that deed just casts a reflection or cloud over my title.' That is the way he explained it, and that is why he wanted me to make him a quitclaim deed, make a new contract, and then when I paid him I would get title to the property."

Kline testified that before he closed his deal with Kelso he went to see Smyser. Smyser said he owned the land, and said there were about three thousand dollars due him at that time. Kline testified further as follows:

"Q. Why did you accept that deed, Mr. Kline, from Mr. and Mrs. Kelso, when you knew that Mr. Smyser had some money against this property that had not been paid? A. Mr. Kelso could not produce a contract that he claimed to hold on this property, but proposed to just make me a deed, as he had no contract, and I demanded the deed. He had no contract."

The court submitted to the jury the following special questions relating to the fraud which induced the transaction of July 23, 1926:

"No. 2. At the time of the execution of the contract between Smyser and Kline, dated the 23d day of July, 1926, and at the time of the execution of the quitclaim deed from Kline and wife to Smyser for the land in question, did Smyser represent to Kline that he was the owner of the twenty acres of land in question? A. Yes.

"No. 3. If you find that Smyser represented to Kline that he was the owner of the property in question, did he at the same time state that he held the title thereto as security for a loan? A. No.

"No. 4. If you find that Smyser represented to Kline that he had a deed for the property in question, did he, at the same time, state that he held the title thereto as security for a loan? A. No.

"No. 5. At the time the defendants entered into the contract of July 23, 1926, with H. L. Smyser, did the defendants believe that the plaintiff held the legal title to the twenty-acre tract involved, so that he could make a valid deed to the defendants, conveying to them the title to said twenty-acre tract? A. Yes."

The court made findings of fact which included the following:

"The agreement made July 23, 1926, between H. L. Smyser and R. W. Kline in reference to the land in question was procured through fraud on the part of H. L. Smyser as found by the jury."

It will be observed that no question was propounded to the jury with respect to what Smyser said to Kline about Kelso's deed, probably because the reason Kline gave for ineffectiveness of the deed as a conveyance was sound. The court made no finding on the subject, and simply adopted the jury's findings. The result was the Kline-Smyser deed and contract were set aside because Smyser represented to Kline that Smyser was owner of the land, and did not tell Kline he held title as security for a loan.

What Kline understood from the representation that Smyser was owner is disclosed by the jury's fifth finding of fact. What Kline understood is of no importance except as it makes definite what he relied on, which was that Smyser held legal title and could make a valid deed conveying title to Kline. There was no dispute that Smyser held legal title. He had a recorded deed from Meador, the acknowledged source of title. It has already been shown that effectiveness of that deed as a conveyance was no longer disputable; Smyser was in position to make a valid deed conveying the land to Kline, and the representation on which Kline relied was not fraudulent.

The finding that when Smyser told Kline that Smyser was owner of the land, Smyser did not tell Kline that Smyser held title as security, is of no legal consequence. Kline was informed that Smyser had theretofore held title as security in a manner which Kline may not dispute. Kline signed the contract the opening paragraph of which stated that Smyser had theretofore held title as security.

There was neither pleading nor proof that when the contract was tendered to Kline for signature Smyser made any false representation with respect to the contents of the instrument, or procured Kline's signature by trick, artifice, deception, or other unfair means. Kline said he did not read the instrument thoroughly, that he just glanced over it, and that he really would not have understood it if he had read it; but he did not pretend he was prevented from reading it or from getting an understanding of it, and under elementary principles of law he is held to knowledge of and assent to every provision of the instrument. That he was induced to assent by misrepresentation of something not expressly dealt with in the contract is, of course, another matter, and has been considered.

There was no confidential relation between Smyser and Kline. They dealt at arm's length. Kline was not mentally defective, and because he had unobstructed opportunity to know, he cannot be heard to say that because of inaptness of comprehension he did not know the contents of the instrument. It is indispensable that Smyser must have been guilty of fraud. Besides that, having signed the instrument under circumstances forbidding him to dispute knowledge of what it contained, Kline is forbidden to say he relied on a representation contrary to what the instrument spoke on the same subject. The case of *Marshall v. Gilman*, 52 Minn. 88, is illustrative. The third syllabus reads:

"If one, negotiating for the purchase of a lot of land represented to be of a certain width, afterwards accepts a conveyance describing the property as being of a less width, he cannot be deemed to have purchased relying upon such prior representation."

In this instance there was no representation to be relied on contrary to what the instrument said concerning the matter of holding title as security.

The contract was signed in the office of Mr. E. L. Foulke, of Wichita. Mr. Foulke is a member of the bar of this court in whom the court reposes confidence. He was a witness at the trial, and related the circumstances under which the contract was prepared and executed. Kline and Smyser came to Mr. Foulke's office, the subject matter of the contract was discussed in detail, both parties made suggestions, advice was given with respect to what should be done, and Mr. Foulke dictated the instrument to his stenographer in the presence of Kline and Smyser. He endeavored to embody the agreement of the parties in the instrument. Kline and Smyser went away, and two or three days later returned to Mr. Foulke's office. Mrs. Kline also came. Three typewritten copies of the instrument had been made, two on white paper and one on yellow paper. One white copy was handed to Mrs. Kline, the other to either Kline or Smyser, and Mr. Foulke then read the yellow copy aloud, in its entirety, to make sure the parties understood the instrument. Kline disputed Mr. Foulke's testimony, but as indicated no issue was raised by the pleadings with respect to the incidents attending the signing of the instrument, the court did not submit the matter to the jury or make any finding regarding it, and Kline is bound by the contract.

Kline's answer alleged there was no consideration for the contract. The cancellation of Kline's assumption of indebtedness was sufficient consideration, but the court held there was a partial failure of consideration because the interest which Flora E. Parker acquired in the land had not been conveyed and was outstanding. Flora E. Parker paid nothing for the land. She was a mere beneficiary of the Meador-Parker bargain whose acquisition of ownership of the land was contingent on due performance of her contract with Smyser. She did not perform. Her husband put it out of his power to obtain title for her or for himself. She gave up possession of the premises. She allowed Kelso to enter and to make his wildcat deed to Kline. She allowed Kline to enter and occupy. She allowed the

long-suffering Smyser to assert his rights under his deed from Meador and his contract with her, and to contract to convey to Kline. She never did have a conveyance, she has forfeited her privilege to obtain delivery to her of the deed in the bank, and she has no outstanding interest in the land as against Smyser.

The result of the foregoing is that the defenses of fraud and failure of consideration were not established.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment for plaintiff.